Good morning, Honorable Justices. I'm Richard Dangler for Joshua Sanders, the petitioner. Let's give your opponent a chance to – oh, I apologize. They're making a little noise. Thank you. I think you're up. Thank you, Your Honor. I didn't mean to shoo you away from the podium. I'd merely like – In that way, as I'm sure the conservative commentators will tell you, there's no justice at this court. We're all judges. We'll certainly hope for the best. I'd like to reserve about half my time for comment. I think the Court's probably very aware that the heart of this case is finding prejudice. And under the Strickland standard, when it comes to counsel's behavior, whether it's reasonably probable, there would have been a more favorable result. This is – the title of this case is sort of a bird in the hand, right? Yes. Yes, it is. And I take it your principal argument is that in moving to withdraw the plea to the felony and misdemeanor in the arrangement that Sanders had with the government, which included the government making a motion to result in a downward departure, was constituted ineffective assistance. That's 80 percent of my argument, Your Honor. What's the other 20? The other 20 has to do with the Brightline rule under the Bruce case and Federal Rule of Criminal Procedure 11E. I'm sorry. I think one of the most important parts of the findings – and by the way, just to back up for a second, there's no doubt that the magistrate made some findings in our favor, the bird in the hand. At EOR 1079, the magistrate found that there was no doubt in the magistrate's mind that Danny Williams' movement's counsel was ineffective. And at EOR 1082, the magistrate found that 11E of the Brightline rule was probably violated. The magistrate really went on to say, no harm, no foul. And that's where we start to depart a little bit. The briefs are full of a reference to the fact that the gravamen of this withdrawal of this very favorable plea agreement to this young man in favor of the guilty plea was from a felony and a misdemeanor to two felonies. And at first blush, you might say, well, so what? And just – I don't think the briefs go into it too much, but to touch for a moment on the disabilities that are playing on the face of that sort of fee agreement. And one of the government's most interesting points in authorities, Macubata versus United States, 368 U.S., 487, let's say hypothetically, just to throw out a hypothetical, that here we are 10 years from the date of the crime, almost seven years from the plea bargain. Let's say hypothetically today the petitioner, a graduate of San Francisco State College, was finishing his first year at USF Law School and was seated in this courtroom looking forward to one day facing the California bar. Would one say that, oh, there was no inherent disability in pleading guilty to two felonies instead of a misdemeanor? I think the Mike Macubata case makes it clear that it's just common sense that there was a great disability imposed on the petitioner. Well, but of course it's not pleading guilty to two felonies as compared to one misdemeanor. It's two felonies compared to pleading guilty to one felony and one misdemeanor. Correct, Your Honor. That is to say, whichever variation you have, there is a felony conviction. That is correct, Your Honor. And if I were to say... And what's the additional disadvantage in that sense of reputation or ability to vote or ability to get jobs from having more than one instead of merely one felony conviction? Well, I think I could answer that question, Your Honor. Please. Let's take the second judge's finding that, gee, the second felony showed a certain amount of deliberation and therefore I'm going to not allow the four-point reduction. Well, that's in a legal context. In the context of, quote, the real world, let's say a CEO was looking at this young man's background and deciding whether he, let's say he got an MBA instead of a law degree. Let's say he was applying for a job and the CEO said, well, you know, I could understand you're getting drunk as a young man and mailing out one letter, but it appears that the court found that you actually did this twice and you probably thought about it twice and that's why you're convicted of two crimes, not one. I think there's a lot there. Fair answer. I understand. Okay. Then beyond that very simplistic level of two felonies versus one misdemeanor violating housing rights and one felony, we get into the real gravamen of prejudice here. Why was this petitioner in a legal sense really prejudiced by the ineffective assistance of counsel? And by the way, there's no question that a lot of people, except Judge Garcia when he thought he was doing the petitioner a favor, recognized at the outset that there was a serious problem going on. You said you wanted to save about half your time. It's your time. You use it as you wish. I'll take about one more minute and I'll get to the heart of this and then sit down, Your Honor. This big difference in the points under the sentencing guidelines is really about 2A61B2 and why the plea agreement was so much more beneficial. There's no doubt that Danny Williams left the chambers and told the client, and that's part of the EOR, gee, I'm recommending this because the judge is recommending it and you're going to get less time. There's no doubt that per the EOR, Miguel Rodriguez said that he thought that the probation department and the judge were wrong and that the two felonies would require a greater sentence. That's right on the record at 626 of the EOR and 794 for Miguel Rodriguez's statement. Well, I can think of about seven reasons, real quickly, why the reduction would almost invariably have been granted, why it's reasonably likely that the petitioner would have gotten this. Number one, the government agreed not to oppose this reduction in the plea agreement itself. That's EOR 20. Number two, the government agreed not to oppose the two-point acceptance of responsibility per 3E1.1. That's EOR 21. Number three, the government would have been he would have been pleading only to one felony count. That's EOR 20. Number four, the offense conduct was to be considered as to one count only. That's EOR 509. Number five, the government agreed Movent's counsel involved little deliberation, and the government was stipulating to that point which would have supported the reduction, EOR 21. Number six, the probation department was recommending it. The probation department was saying give this young man the lowest possible sentence. That's EOR 1041. Number seven, the U.S. recommended the low end of the guidelines in the plea agreement itself, EOR 22. So there's a tremendous burden in this young man having been talked out of this plea agreement, and I'll save the rest for rebuttal. Thank you very much. We'll hear from the government at this time. May it please the Court. My name is Michele Rodriguez, and I was the prosecutor approximately 10 years ago in 1990 when Mr. Sanders was charged, I guess was charged in 1993. In addition, I was present during the time that the defendant was initially going to be sentenced after the first PSR. I was present during the chamber's conversation during that time. I was also present when Mr. Sanders withdrew his plea agreement. The government objected to the withdrawal of the plea, didn't it? I objected strenuously, Your Honor. I wanted to make it clear at the time, and I did so, that I believed that Mr. Sanders was getting the benefit of not only professional representation, but competent, reasonable representation. Mr. Williams and I worked on this plea agreement for a very long time. Mr. Williams was a strong advocate of this plea agreement. Mr. Williams and I came up with this plea agreement after a lengthy negotiation process. Judge Shub, in his inquiry into this plea agreement, merely questioned whether or not the parties fully appreciated all of the aspects of the plea agreement and the consequences. Judge? This is an interesting case in the sense that I see no suggestion here that the government did anything inappropriate. The government negotiated a plea agreement. It appears entirely fair. It involved a number of concessions by the government to obtain the plea. It was clearly beneficial to the defendant. And then you have the PSR comes out and has this suggestion that, oddly enough, Sanders might be in a better position if he pled to two felonies as opposed to one felony and one misdemeanor because of some peculiarities in the sentencing guidelines. And that's why I call this a bird in the hand, because apparently the bird, two birds in the bush, appeared more attractive to counsel. I don't think the government did anything wrong. In fact, you objected to the attempt to withdraw the plea and made absolutely clear that the commitments the government had made in the plea agreement were no longer binding if the plea was withdrawn. And that's the focus, at least from my perspective, of the ineffective assistance of counsel claim, is it does it constitute ineffective assistance in this circumstance to give up all that was obtained in the plea agreement and then withdraw the plea and lose all of that and then subject yourself to sentencing for two felonies? And your opponent says, yes, it is? What's your position? Well, Judge Hawkins, it's exactly that sharp debate which was, in fact, on the table, fully transparent to all of the persons in the courtroom at that time. In other words, how does that affect whether it was ineffective assistance or not? Because Mr. Sanders and his counsel fully appreciated the fine point placed on the debate. In other words, for this court to find that counsel was substandard, that his advice to withdraw was erroneous or fell below a reasonable professionally competent standard, it would have to say that there was a gross mischaracterization of what was going on here. The debate was very sharp. Mr. Sanders, just as the court pointed out, knew everything that was on the table. Everything was in plain view. The issues were very sharp, finely tuned. Mr. Sanders can't say it's this legal mumbo-jumbo I didn't understand or my counsel didn't understand it. The debate was clear. And Mr. Sanders made the choice based on, essentially, I mean, risks that were transparent. There was no hiding of the ball. I tried to make it clear. Judge Shub went out of his way to make sure, Mr. Sanders, do you understand this? And Mr. Sanders said, I'm trying to understand what the nature of the informed consent might have been, and the understanding and explanations have to do with whether ineffective assistance was rendered. And I ask you to consider the following hypothetical. Same circumstance, only the charge is murder. And in the plea agreement, the government agrees not to seek the death penalty. Okay. And there's a full explanation, and the defendant clearly understands it and allows his counsel to withdraw the plea and enter a plea to two counts of first-degree murder, and the net result is the defendant gets the death penalty. In that hypothetical, what amount of informed consent negates the ineffective assistance? Your Honor, in that circumstance, if we're looking at a table trying to identify all the things that are on the possible table as possible outcomes of making a decision, in that case, if you have among the panoply of things that are possible no possibility of death penalty, and that's a plea agreement condition, essentially stipulation. And then on the other hand, on a PSR comes back and it says, you know, oddly enough, Your Honor, if this individual pled guilty to two as opposed to one murders, he might be eligible for life with the possibility of parole. The plea agreement gives him life without possibility of parole, and the dependent in that circumstance says, I want to roll the dice. And that's what he does. And you're saying in that circumstance you could not make out an ineffective assistance at counsel point. Well, you cannot because when he rolls the dice, he knows everything that's on that – everything at risk when he rolls that dice. He knew full well. The debate, again, was finely tuned. He knew everything that could happen. Let me ask it this way, though, because he knew depends on – I mean, there are two different he's. There's one, there's the lawyer, Mr. Williams, and there's two, there's Mr. Sanders. Now, the lawyer knows, I'm assuming he knows, your affidavit, among other things, is very clear that you warned him. I'm simply reading from your affidavit. I also explained that Sanders may, when convicted after trial, lose acceptance of responsibility as well as receive an upward adjustment for his multiple threats. And that's exactly what happened. So the lawyer is faced with that. You've warned him very clearly. You've been very consistent about this all along. And in the face of that warning, he goes ahead and all these bad things happen. But what does Mr. Sanders know, who is a layperson, who tells us in his affidavit that he was strongly urged by his lawyer to withdraw the plea and take his chances? How are we to say Mr. Sanders was in a position independently to evaluate the risks that his lawyer clearly should have evaluated? Well, Your Honor, I can only say that this is, if it was a problem, I didn't see it because I was arguing with Mr. Williams and Mr. Sanders was standing right next to me and I was arguing with the judge, and Mr. Sanders understood what we were arguing about. It was finely tuned. And even if that were not the case, in other words, he didn't thoroughly understand, which he says, and my quotes in the response brief are clear, the judge said to Mr. Sanders, you understand there's a debate about this particular adjustment downward and whether it applies. And Mr. Sanders indicated that he did. And in all of that, Mr. Sanders understood there were risks associated with proceeding in this fashion and going in this path. And I would only offer further that, you know, while the government tried to encourage Mr. Sanders not to go down this path and Mr. Williams negotiated hard not to go down this path, it was ultimately Mr. Sanders' choice. And it's always that choice. Okay. I think I understand your position. Let me ask you a separate question that I don't see addressed in the brief. This case was a long time ago. I assume he served his sentence. Yes, he has. This is a habeas case. Yes. What consequences are there that allows this to be, you know, a viable writ of, you know, what are the restrictions on his freedom that the habeas could attach to? Everything is, has been served that can be served. The only lasting impact is the second felony conviction because there's no dispute as to the first charge, count one. That was never, the writ doesn't attack that. There's no petition to vacate the conviction on count one. What's before the court is whether the conviction on count two is at issue. Well, I understand that. But what continuing restrictions on his freedom do now exist as a consequence of the second felony conviction?  Then how do we have jurisdiction in habeas? Your Honor, I believe it's only the lasting impact of his rap sheet, if you will, and the fact that this felony, second to felony, will follow him. I would submit to the court very briefly on the prejudice question. This is exactly what Mr. Sanders desired. He was trying to maneuver yet again for a better deal. And he shouldn't be rewarded for rolling the dice, rolling the dice again, and now a third time trying to get yet another chance at trying to maneuver for advantage. There has to be some finality to these matters. With two felonies, if he gets another felony, he's in a jurisdiction that has three strikes and you're out, he's got a lifetime. Your Honor, that is a concern for Mr. Sanders. In California, you have the three strikes and you're out. I sure do. That is a concern. Was that discussed at the time? That statute was not in the books at the time. But, Your Honor, people have to be responsible for their conduct. They have to be made responsible for their decisions. And, you know, my mother always told me, you make your bed, you lie in it. He has two felonies. He chose to pursue that path. He wanted, at that time, he made the election. How much was the judge involved in this? And I hear we're talking about the sentencing, the probation officer's sentencing report. What did the judge have to do with all this? Your Honor, having been there and knowing Judge Shubb, having practiced in his court for now 13, 12 years since he's been a judge, I know what Judge Shubb was interested in, and he made it clear on the record. He was concerned that Mr. Was this all openly in the open? There were two discussions. One was a chambers discussion. What happened in chambers? Judge Shubb was concerned about Mr. Sanders being aware that there were other alternatives. Alternatives to what? To how he's proceeding. He wanted to check and make sure that Mr. Williams had done his job. And he was assured in the chambers discussion that Mr. Williams had done his job. And further, he was concerned about the factual basis underlying the second misdemeanor charge in particular. And in addition, we went back out on the record. He put it all on the record, Judge Shubb did. And at that time, he thoroughly, and the record will support this, he thoroughly questioned Mr. Sanders and his counsel, and every opportunity was given to Mr. Sanders to say, I want more time to think about this. I want another attorney. I don't understand. Our questions have taken you way over your time. And I apologize for that, Your Honor. Thank you for your argument and for appearing here today. Rebuttal? Very quickly, Honorable Justices, if Mr. Sanders was rolling the dice, he sure had a lot of help in throwing them hard. He had the help of three different entities providing an influence on him at that moment. One was the probation department. The probation department was telling him, if you plead guilty to one felony and one misdemeanor, the probation department was mistakenly telling him, if you plead guilty to one felony and one misdemeanor, you're likely to get a higher sentence than if you plead guilty to two felonies. And that is right in the record. Let's be fair. They didn't say likely. They didn't say likely, yes. They said there's a probability or a possibility. The impact of that is substantial. And that's at RA 1517 and EOR 794. Then, in addition to the aid of the probation department, the probation department had convinced the judge at that point that that was a real possibility. And the record is replete that in the in-chambers conference, the judge made clear that he felt he could not go forward with the case. Those are the judge's own words because of this probability that he would receive a higher sentence with one felony and one misdemeanor than two felonies when, in fact, this mistake had just infused itself in the court and both were wrong. And this wrong information was then promptly communicated to Mr. Sanders. The in-chambers conference infused the advice of counsel immediately. And as William says at page 626 of our EOR, quote, I strongly recommend that he follow the judge's suggested alternative because I believe the judge would follow the recommendation of the probation office and impose a lower sentence, possibly even probation with a condition of community release. The judge didn't say let's do it that way. That's right. Consider it. That's right, sir. The judge did not say let's do it that way. But the import of all of these did not really leave Mr. Sanders with that much of a free choice. And when counsel is suggesting that Mr. Sanders made an informed decision at that point, if you look at the record. What's the practical effect of reversal now? The practical effect of reversal could be substantial because Mr. Sanders walks with these two felony convictions every day of his life for the rest of his life. Well, he goes back and what? Repleads? Mr. Sanders, if you overturn this conviction due to the Sixth Amendment violation of effective assistance of counsel, the import is that this will be given back to the government and back to the court system to decide what to do with it. And I think that a just result will occur. We understand your argument. Thank you for appearing here today. The case just argued will be submitted.
judges: Hawkins, W.fletcher, King